UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| RONALD RYAN BERRETT and LANIE BERRETT, husband and wife, | Case No. 4:12-CV-00626-EJL-CWD |
|---|---|
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| CLARK COUNTY SCHOOL DISTRICT NO. 161, | |
| Defendant. | |

Pending before the Court in the above-entitled matter is Defendant Clark County School District No. 161's (District) Motion for Summary Judgment (Dkt. 20). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## FACTUAL BACKGROUND

Plaintiffs Ronald Berrett and Lanie Berrett (Berretts) are husband and wife and were both employed by the District. Mr. Berrett was employed as a part-time maintenance supervisor. It is undisputed Mr. Berrett is disabled and that the District was

aware of his disability. Mr. Berrett did not want a full-time position with the District because if he earned too much (an amount over $1,000 per month) he would lose his disability benefits that he received monthly. The District accepted Mr. Berrett's request for limited part-time hours and was aware that due to his disability the maintenance duties may take a longer amount of time to be completed.

Mr. Berrett asked for additional help in completing all of his maintenance duties. The District offered Mr. Berrett full-time employment, but he declined the offer. The District did agree to hire Ms. Berrett to mow the lawns in order to give Mr. Berrett more time to complete his duties. The District did not hire any other employees to assist Mr. Berrett. Mr. Berrett was never negatively reviewed for the time it took him to complete projects and the District never complained about Mr. Berrett's maintenance work.

In January 2012, there was an issue with a propane leak in the old gymnasium. A number of teachers and others had complained of a propane smell. Mr. Berrett advised Superintendent Kerns of the problem. It took several months to determine the actual problem and then when a repair plan was developed, it had to be modified and the total cost of repairs was approximately $36,000. Mr. Kerns informed the School Board of the ongoing tests and results. The work was done during the summer of 2012 by an outside contractor.

In April 2012, there were public bids requested for 30,000 gallons of propane for the District. During the bid process, it was determined that the District did not own the existing tanks or vaporized, the so those pieces of equipment had to be replaced. At the

**MEMORANDUM DECISION AND ORDER - 2**

May 17, 2012 School District Meeting, Mr. Berrett reported to the Board there were still propane issues as well as a problem with the systems's vaporizer. An outside contractor also addressed the School Board about the vaporizer issue. The vaporizer problem was resolved when a new tank and vaporizer were installed by an outside contractor in the summer of 2012.

Also at the May 17, 2012, meeting, Superintendent Kerns met with the School Board in executive session and tendered his resignation. The School Board accepted the resignation but continued Mr. Kerns under contract as interim superintendent until a new superintendent was hired or Mr. Kerns left for another position. Mr. Kerns worked as the interim superintendent through July 2012.

In late May or early June 2012, it is undisputed that Mr. Berrett posted a derogatory Facebook post about Mr. Kerns. Several students and parents saw the post and some students commented about the post. Mr. Kerns considered the post inappropriate and in violation of District Policy. Mr. Kerns confronted Mr. Berrett and informed him the post was inappropriate and must be removed. Mr. Berrett responded by calling Mr. Kern as "f**king asshole." The Facebook post was subsequently deleted.

At the next meeting with the School Board, Mr. Kerns discussed the Facebook post and Mr. Berrett's statement to Mr. Kerns. The School Board determined that termination was appropriate and on June 27, 2012 a letter of termination was sent to Mr. Berrett. The letter indicated Mr. Berrett was being terminated due to "insubordination and verbally abusive to the District administrator and having ridiculed personnel through

**MEMORANDUM DECISION AND ORDER - 3**

social media on the internet." Dkt. 20-7, Ex. B. The letter also indicated that because he was no longer a District employee, he would have to vacate the district owned housing. *Id.*

Mr. Berrett maintains his disclosure of the propane problems led to his dismissal. The District claims the propane repairs had nothing to do with the decision to terminate Mr. Berrett. School Board Chair, Erin Haight-Mortensen, filed an affidavit indicating the propane issues had no bearing on the decision to terminate Mr. Berrett and that she was informed of the propane issues beginning in January 2012. Ms. Haight-Mortensen also indicated in her affidavit that Mr. Berrett was asked if he would like to work full-time and he declined to accept full-time employment as he would lose his disability benefits. The District agreed to allow Mr. Berrett to work part-time and Ms. Haight-Mortensen does not remember any request for accommodation by Mr. Berrett other than his request to only work part-time.

Mr. Berrett requested a meeting with the School Board and a meeting was held on or about July 3, 2012. Mr. Berrett testified in his deposition that he wanted to confirm the School Board agreed with Mr. Kerns' termination decision. The School Board members indicated to Mr. Berrett they agreed with the termination decision.

Ms. Berrett started work in the school kitchen in 2007. There is no allegation that Ms. Berrett suffers from any disability. In 2009, she was promoted to Lunchroom Supervisor. Her responsibilities included ensuring the kitchen was run properly, completing state required paperwork, and preparing the annual budget for the kitchen.

**MEMORANDUM DECISION AND ORDER - 4**

The District maintains that for three consecutive years Ms. Berrett exceeded her budget. The District indicates it had allowed for $15,000 in overages but that the actual overages exceeded the budgeted amounts and the District had to transfer money from other departments to pay the overages in the lunchroom. Ms. Berrett was informed each year by the District Business Manager, Ms. Woods, that exceeding her budget was unacceptable.

In June 2012, it was determined that Ms. Berrett had exceeded her budget for the 2011-12 school year by about $63,000. On June 27, 2012, Ms. Berrett was provided a letter notifying her of her termination. The letter stated "You have consistently overspent the Food Service budget each year, with the amount increasing each time. Your also are not performing satisfactorily in your supervisory duties and you have not followed direction from your own supervisor when called upon to make sure District policies and procedures are followed." Dkt. 20-7, Ex. C. The letter also indicated that because she was no longer a District employee, she would have to vacate the district owned housing. *Id.*

Originally, the District wanted the Berretts to vacate the District housing by July 9, 2012, but that date was extended to give the Berretts thirty (30) days to vacate the District-owned housing after the Berretts raised the issue that under the Fair Housing Act they were entitled to more time.

On or about September 25, 2012, Mr. Berrett filed a Notice of Charge of Discrimination with the EEOC. The EEOC subsequently issued a "Right to Sue" letter.

**MEMORANDUM DECISION AND ORDER - 5**

Ms. Berrett did not file any claim of discrimination with the EEOC or the Idaho Human Rights Commission. The Berretts filed the Complaint on December 20, 2012 (Dkt. 1). The Complaint alleges three causes of action: (1) violation of the Americans with Disabilities Act (ADA), (2) violation of the Fair Housing Act, and (3) violation of the Idaho Whistleblower Act, Idaho Code § 6-2101. The District denies all three claims and moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248.

**MEMORANDUM DECISION AND ORDER - 6**

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining the admissibility of evidence for a summary judgment motion, it is the contents of the evidence rather than the form that the court must consider. *Fraser v. Goodale*, 342, F. 3d 1032, 1036-37 (9th Cir. 2003).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

**MEMORANDUM DECISION AND ORDER - 7**

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

## ANALYSIS

Plaintiffs have raised three causes of action related to their alleged wrongful termination by the District. The Court will address each cause of action separately, but will begin with Defendant's argument that due to the at-will status of the Berretts, they are unable to claim wrongful termination on any grounds.

1. At-Will Employee Status and Public Policy

Defendant argues summary judgment should be granted in its favor as Mr. and Mrs. Berrett were at-will employees and could be dismissed at any time for no reason at all without incurring liability. *Mitchell v. Zilog, Inc.*, 874 P.2d 520, 523 (Idaho 1994). Plaintiffs agree they were at-will employees, but claim they can bring an action for wrongful discharge if they can show their termination was in violation of public policy. *Jackson v. Minidoka Irr. Dist.*, 563 P.2d 54, 57 (Idaho 1977). If Mr. Berrett was terminated in violation of the ADA or the Idaho Whistleblower Act, Plaintiffs argue they have met the requirement for discharge in violation of public policy.

**MEMORANDUM DECISION AND ORDER - 8**

The public policy exception to the at-will doctrine is triggered only where an employee is engaging in some protected activity, which includes (1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges. *Van v. Portneuf Medical Center*, 212 P.3d 982, 991 (Idaho 2009). Whether an employee is engaged in a protected activity is a question of law. *Id.* In determining whether an activity is protected, the court analyzes (1) whether there is a public policy at stake sufficient to create an exception to at-will employment, and (2) "whether the employee acted in a manner sufficiently in furtherance of that policy." *Thomas v. Med. Center Physicians, P.A.*, 61 P.3d 557, 565 (Idaho 2002). The public policy must generally be based on case law or statutory language. *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 738 (Idaho 2003). Finally, it is up to the employee to show that his termination was in fact motivated by his participation in the protected activity. *Id.* The Court will now determine if a public policy exception applies to the claims.

2. ADA Claim

The ADA creates a duty on employers to provide a reasonable accommodation for a known disability of a qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). A prerequisite to liability for an employer's failure to accommodate under the ADA is that the plaintiff must have requested an accommodation from the employer. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006).

To establish a prima facie ADA claim, and employee has the burden to show: "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or

**MEMORANDUM DECISION AND ORDER - 9**

without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability." *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000). If plaintiff establishes the prima facie case of discrimination, then the burden shifts to the employer to come forward with a non-discriminatory reason for discharge. *Snead v. Metropolitan Property & Cas. Inc. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). The burden then shifts back to the employee to show that the employer's alleged non-discriminatory reason for termination was a pretext for the alleged discrimination. *Id.*

It is undisputed that Mr. Berrett is disabled and the District was aware that Mr. Berrett was disabled since he informed the District he was receiving disability payments and was not able to work more than a part-time schedule. Superintendent Kerns knew that Mr. Berrett had problems physically on one side of his body, that he walks with a limp, had trouble walking and it was hard for him to climb a ladder.. It is also undisputed that Mr. Berrett was qualified and able to perform the essential functions of his position as a maintenance supervisor. It is undisputed Mr. Berrett suffered an adverse employment action when he was terminated, however it is disputed whether he suffered an adverse employment action *because of a disability*. *See Allen v. Pacific Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (emphasis added).

Mr. Berrett claims he asked the District to hire more help, but he does not claim he was unable to do the maintenance work because of his disability, only that the time to complete the work may have taken him longer due to his disability and arguably there

**MEMORANDUM DECISION AND ORDER - 10**

was more maintenance work to be completed than could be completed by a part-time employee. There is no evidence in the record that Superintendent Kerns or the school board were concerned about or complained about the amount of time Mr. Berrett needed to complete his work or that maintenance work was not being completed.

Under the ADA, "employers are required to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111 (9th Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 391 (2002). "The interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition for such an accommodation." *Id.* at 1112. An employee is not required to use any particular language when requesting an accommodation but need only "inform the employer of the need for an adjustment due to a medical condition." *Id.* The interactive process required: (1) direct communication between the employer and the employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. *Id.* at 1114-15. An employer is liable for a failure to provide reasonable accommodation only where the employer is responsible for the breakdown in the interactive process. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080. 1089 (9th Cir. 2002).

Mr. Berrett argues his asking for additional maintenance help was his request for accommodation and the District failed to provide a reasonable accommodation. It is undisputed that Superintendent Kerns gave Mrs. Berrett eight additional hours of work

**MEMORANDUM DECISION AND ORDER - 11**

each week to help with mowing the school grounds to assist Mr. Berrett. This was also to avoid Mr. Berrett exceeding his twenty hours of work a week which would impact his disability payments. No other additional help was hired by the District.

In viewing the evidence in light most favorable to the Berretts, arguably the evidence is enough to satisfy the Plaintiffs' burden of establishing a prima facie showing that the District failed to provide a reasonable accommodation by not hiring more maintenance personnel and that Mr. Berrett suffered an adverse employment action because of the disability. The Court will now examine whether the District is able to rebut this showing by providing a non-discriminatory reason for Mr. Berrett's termination.

The Court notes the District maintains that the request for more help was not a request for accommodation due to Mr. Berrett's disability, but was a request related to the amount of maintenance work that needed to be done. There is no evidence in the record the District required Mr. Berrett to work more than the part-time hours he agreed to. Even assuming the request for an additional maintenance worker was a request for accommodation, the Court finds there is no evidence the request for more help was a "motivating factor" in Mr. Berrett's termination. *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005).

The District has provided testimony that the basis for Mr. Berrett's termination was not due to his ability to complete the maintenance work, but was instead due to a violation of District policy when he posted derogatory comments on the internet and

**MEMORANDUM DECISION AND ORDER - 12**

treated the Superintendent disrespectfully when confronted about the Facebook posting. There is no indication in the letter of termination or testimony of the witnesses that the termination was because of Mr. Berrett's disability.

The burden now shifts back to Mr. Berrett to present facts to put at issue the District's reasons for termination were mere pretext for discrimination. Mr. Berrett does not deny the Facebook posting or being disrespectful to the Superintendent when confronted. Mr. Berrett does not deny that his behavior regarding the Facebook posting could be viewed as a violation of District policy. Mr. Berrett does not deny the replacement maintenance worker hired after Mr. Berrett also suffered from a disability and was employed in a part-time capacity. Mr. Berrett does not deny that when he asked for the meeting with the School Board, the Board members confirmed their agreement with his termination. Mr. Berrett does not refute School Board Chair Erin Haight-Mortensen's affidavit indicating the propane issues had no bearing on the decision to terminate Mr. Berrett and that she was informed of the propane issues beginning in January 2012.

Mr. Berrett has not carried his burden in creating a genuine issue of material fact that his termination was pretext for being terminated based on his disability. The Court finds the facts are undisputed and do not create a genuine issue of material fact regarding whether there was a legitimate basis for Mr. Berrett's termination. The Court finds the basis for the termination has not been shown to be pretextual and there is no evidence the termination was due to Mr. Berrett's disability. Therefore, the claim that Mr. Berrett was

**MEMORANDUM DECISION AND ORDER - 13**

terminated in violation of public policy related to the ADA must be dismissed. Additionally, because Mr. Berrett's ADA claim is dismissed any related claims by Ms. Berrett cannot proceed and must be dismissed as well.

      3. Whistleblower Act Claim

Plaintiffs' second ground for termination in violation of public policy is The Idaho Protection of Public Employees Act ("Idaho Whistleblower Act"), I.C. §§ 6-2101—6-2109. Mr. Berrett maintains the reason he was terminated was due to his reporting the propane issue and his insistence on repairing the propane leak and bringing such issue to the District's attention. Reporting such misconduct falls can fall under the public policy exception if the conduct reported by Mr. Berrett is unlawful and it involves the health and welfare of the public. *Crea v. FMC Corp.,* 16 P.3d 272, 275 (Idaho 2000).

In order to withstand a motion for summary judgment, Plaintiffs must establish that Mr. Berrett "engaged or intended to engage in a protected activity." *Id.* at 464 (quoting Idaho Code §§6-2104 & 6-2105(4)). Protected activities under the Idaho's Whistleblower Act are described by the statute. The Idaho Whistleblower Act provides "a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." Idaho Code § 6-2101. In order to protect an employee from such action, Idaho Code § 6-2104(1)(a) provides: "An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the employee, communicates in good faith the existence of any waste of public funds, property or

**MEMORANDUM DECISION AND ORDER - 14**

manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States."

"Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation." *Id.* In order to have a valid cause of action under the Idaho Whistleblower Act, "the employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee, or person acting on his behalf engaged or intended to engage in an activity protected under section 6-2104, Idaho Code." Idaho Code § 6-2105(4). Thus, in order to have engaged in a protected activity, Berrett must establish that he communicated in good faith a "violation or suspected violation of a law, rule or regulation."

In the present case, in order for the Berretts to withstand a motion for summary judgment, they must establish a prima facie case of retaliatory conduct for an action protected by the Idaho Whistleblower Act. Under the Idaho Whistleblower Act, a prima facie case for retaliatory discharge requires a plaintiff to show that: (1) the purported communications regarding the propane issues constituted a protected activity; (2) the District's decision to terminate the Berretts employment constituted an adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *See Curlee v. Kootenai County Fire & Rescue*, 224 P.3d 458, 464 (Idaho 2008) (quoting I.C. §§ 6-2104 and 6-2105(4)).

Mr. Berrett claims his reporting of a problem with the propane systems was a communication protected under the Whistleblower Act and/or the public policy exception

**MEMORANDUM DECISION AND ORDER - 15**

for wrongful termination. *See Ray v. Nampa Sch. Dist. No. 131*, 814 P.2d 17 (Idaho 1991) (protecting reports of electrical building code violations). The undisputed facts are that propane smells were detected in or near the old gymnasium by Mr. Berrett as well as other teachers and administrators. Superintendent Kerns was made aware of the problem and third parties were hired to investigate the potential leaks. Superintendent Kerns admitted in his deposition that the Sermon Electric quote in March 2012 included language that equipment without proper gas pressure is unsafe and the tank needed to be brought up to code. This evaluation of the propane issues took several months to complete and identify proper solutions. The ultimate solutions included the replacement of more equipment/pipes than originally estimated. Ms. Haight-Mortensen stated in her affidavit that in her capacity as a School Board member she was first made aware of the propane issue in January 2012. The propane issues were resolved in the summer of 2012.

There is no evidence in the record that Superintendent Kerns instructed Mr. Berrett to try to hide the propane issue or that Mr. Berrett was disciplined for his reports to the school board regarding the propane issue. The Board was advised of the specific equipment that was not up to current codes and was provided estimates from third party vendors to repair or replace the equipment.

Mr. Berrett speculates that his termination was due to his disclosure of the propane issues and equipment being identified by others as not meeting codes. Presumably this belief is because the propane situation was being addressed in the months prior to his termination. However, other than Mr. Berrett's belief, there is no other testimony that

**MEMORANDUM DECISION AND ORDER - 16**

indicates Mr. Berrett was terminated due to his disclosure of the propane issues. There is no evidence Superintendent Kerns or others told Mr. Berrett he could not raise the issues about the propane smell or equipment. There is no evidence Mr. Berrett's propane concerns were not properly addressed by the District. Nor is there any evidence in the record to even suggest Mr. Berrett's termination was due to his failure to maintain propane equipment or pipes. The termination letter makes no reference to maintenance or propane issues. Mr. Berrett had the opportunity to meet with the School Board, but he did not ask them if his termination was due reporting propane issues. Instead, he asked if the School Board agreed with the decision to terminate him, which they indicated they did.

Even if the Court assumes for purposes of this motion that Mr. Berrett's communications about the propane issues were "protected" communications under the Whistleblower Act or under the public policy exception, he has not carried his burden to establish a causal connection between the protected activity and his termination. Nor has he presented any evidence the District's explanation his termination was based on the Facebook posting was pretext for a retaliatory firing based on the propane issues. Therefore, the claim must be dismissed as a matter of law.

Moreover, the Court does not find Ms. Berrett's situation in the school lunchroom qualifies as "protected activities" that would be covered under the public policy exception to the at-will doctrine or under the Whistleblower Act. The record is undisputed that Ms. Berrett regularly exceeded her budget for food services. This is the primary reason given

**MEMORANDUM DECISION AND ORDER - 17**

by the District for her termination. Ms. Berrett has not provided facts to support her termination violated public policy or was due to any concerns she raised under the Whistleblower Act. Therefore, to the extent the Complaint includes a claim by Ms. Berrett under Idaho's Whistleblower Act, it must be dismissed.

    4. Fair Housing Act

The Fair Housing Act of 1964 (42 U.S. C. §§ 3601 et seq.) prohibits housing discrimination on the basis of race, color, religion, sex, disability, familial status, and national origin. Plaintiffs claim their rights under the Fair Housing Act where violated when they were forced to leave the District-owned housing. Ms. Berrett acknowledged in her deposition their ability to rent the District-owned housing was based on the fact that they were District employees. The District maintains it was a longstanding policy that the District-owned housing required one be a District employee. However, the lease did not have this requirement expressly stated in the lease. Nevertheless, when both Mr. and Mrs. Berrett were terminated, the District maintains the Berretts' right to remain as tenants in the housing not longer existed. The Berretts do not contest employment with the District was understood to be a prerequisite to being able to rent a District-owned housing. Therefore, this cannot be a basis for a violation of the Fair Housing Act as the policy of employment applied to all persons who rented District-owned housing.

While initially, the District told the Berretts they needed to move out quickly, this requirement was revised to give them sufficient time under the Fair Housing Act to vacate the premises so that cannot be a basis for relief in the current litigation. Instead, Plaintiffs

**MEMORANDUM DECISION AND ORDER - 18**

argue that their termination of the lease was in violation of the Fair Housing Act as Mr. Berrett was disabled.

The record establishes the monthly rent amount due under the lease was never changed and was set at $350 per month. It is undisputed that the District allowed extra hours of work by Mr. Berrett to be credited against the rent due until it was discovered this could affect his disability status if the reductions for the rent were combined with is salary and the total exceeded the amount he could earn and still keep his disability status. However, there is no showing Mr. Berrett was required to work more than the part-time hours assigned. It was Mr. Berrett's request not to exceed a certain number of hours that prevented Mr. Berrett from working off some of the rent owed.

There is no evidence Mr. Berrett requested modifications to the housing due to his disability. Rather, Plaintiffs claim because Mr. Berrett was terminated in violation of the ADA, his right to lease the housing was in effect terminated due to his disability. The Court has found Mr. Berrett was not terminated in violation of the ADA, so there is no evidence the termination of the lease was due to Mr. Berrett's known disability and the claim under the Fair Housing Act cannot survive.

## CONCLUSION

As discussed above, the Court finds Plaintiffs have failed to establish that genuine issues of material fact exist that would prevent summary judgment from being granted in Defendant's favor on each cause of action. The Berretts were at-will employees and have not established genuine issues of fact exist regarding the application of a public policy

**MEMORANDUM DECISION AND ORDER - 19**

exception for their wrongful termination claims. As to the ADA claim, Plaintiffs failed to establish the basis for termination of Mr. Berrett was pretextual.  As to the Whistleblower Act claim Mr. Berrett failed to establish a causal connection from the alleged protected activity and the decision to terminate him.  Ms. Berrett's alleged basis for termination does not rise to the level of protected communications under the Whistleblower Act or the public policy exception to the at-will doctrine.  Finally, as to the Fair Housing Act claim, the Plaintiffs claim the termination of their right to housing was based on Mr. Berrett's termination based on his disability, but the Court finds Mr. Berrett was not terminated due to his disability, so there could be no related violation of the Fair Housing Act.  For these reasons, the Court finds as a matter of law, Plaintiffs' claims must be dismissed.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 20) is **GRANTED**.

2. Defendant's Motion in Limine (Dkt. 34) is **DENIED AS BEING MOOT.**

DATED: **September 30, 2014**

Honorable Edward J. Lodge
U. S. District Judge